1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   KEITH CANDLER,                          No.  2:19-CV-0394-MCE-DMC-P

12                    Plaintiff,

13        v.                                  <u>FINDINGS AND RECOMMENDATIONS</u>

14   E. PALKO,

15                    Defendant.

16   _____

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983. Pending before the Court is Defendant Palko's motion to dismiss, ECF No. 23.

19   Plaintiff filed a late opposition, ECF No. 25.  According to Defendant, the current action is barred

20   because Plaintiff's claim has already been decided in <u>Candler v. Baker, et al.</u>, E. Dist. Cal. Case

21   No. 2:17-CV-1885-KJM-AC (prior action).

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

# I. BACKGROUND

### A.    <u>The Current Action</u>

The current action proceeds on Plaintiff's original complaint, filed on March 5, 2019.  <u>See</u> ECF No. 1.[1]  Plaintiff's claim relates to events which allegedly occurred in July 2016 while he was housed in administrative segregation.  <u>See id.</u> at 5.  Plaintiff claims Defendant Palko was deliberately indifferent to Plaintiff's suicidal ideations.  Plaintiff alleges that defendant Palko spoke with him and heard him say he felt "the need" to hang himself with a bedsheet.  <u>Id.</u> at 6.  After hearing his state of mind, Defendant Palko sent him back to his room, with no extra precautionary measures, where he had a bedsheet.  <u>Id.</u>  Still feeling the need to hang himself, and being all alone with a bedsheet, Plaintiff attempted to hang himself. <u>Id.</u> at 6-7.  Seeing this, Officer Marquez entered Plaintiff's cell and sprayed him with pepper spray, preventing Plaintiff from hanging himself. <u>Id.</u> at 7.

The Court authorized service on Defendant Palko on November 5, 2019.  See ECF No. 11.  Defendant Palko waived service on April 9, 2020, see ECF No. 22, and filed the instant motion to dismiss based on res judicata on May 1, 2020, see ECF No. 23.  Plaintiff filed an untimely opposition on July 27, 2020.  See ECF No. 25.  Defendant did not file a reply.

### B.    <u>The Prior Action</u>

The prior action was originally filed in the Sacramento County Superior Court and removed to this Court on September 11, 2017.  <u>See</u> ECF No. 1 (prior action).  The court screened the complaint and issued an order on September 13, 2017.  <u>See</u> ECF No. 4 (prior action).  Judge Claire summarized Plaintiff's allegations in the prior action as follows:

> . . . Plaintiff alleges, among other things, that: (1) defendant Palko violated his Eighth Amendment rights by exhibiting deliberate indifference to his serious medical needs when, despite his contentions that he was suffering suicidal thoughts, she cleared him to return to his cell (ECF No. 2 at 11-12); (2) defendants Marquez, Rashid, and Gonzales violated his Eighth Amendment rights by telling Palko that plaintiff was "just playing games" and not actually suicidal (<u>id.</u> at 12); (3) defendant Whitehead violated plaintiff's First Amendment rights by intimidating and threatening him for filing staff complaint (<u>id.</u> at 12-13); (4) defendant Baker violated plaintiff's Eighth Amendment right to be free from cruel

---

[1]    Further citations to documents filed with the Court refer to documents filed in the current action unless otherwise noted.

and unusual punishment by sexually harassing him (footnote omitted) (id. at 15-16); (5) defendants Rashid, Gonzalez, Baker, Marquez, and Whitehead violated plaintiff's First Amendment rights by refusing to let him go to the canteen as a form of retaliation for filing staff complaints (id. at 16-17). . . .

ECF No. 4, pg. 2 (prior action).

Judge Claire concluded Plaintiff's complaint in the prior action violated Federal Rule of Civil Procedure 22(a)(2).  Specifically, the court stated:

> At the outset, the court notes that plaintiff's complaint, despite having been removed from state court, is now subject to the federal rules of civil procedure. See Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action once it is removed from state court."). Plaintiff's complaint violates these rules insofar as it attempts to bring unrelated claims against multiple defendants. Federal Rule of Civil Procedure 20(a)(2) requires that the right to relief against multiple defendants arise out of common events and contain common questions of law or fact. Here, plaintiff has alleged at least two separate claims, namely the deliberate indifference to serious medical needs claim against defendants Palko, Gonzalez, Marquez, and Rashid and the various retaliation claims which plaintiff alleges are all part of a "campaign of retaliation" for filing staff complaints. These claims do not appear to bear any relation to each other. Plaintiff should file an amended complaint which pursues only one of these causes of action. Alternatively, he may allege how, if at all, these incidents arise out of common facts or events.

ECF No. 4, pg. 4 (prior action).

Plaintiff filed a first amended complaint in the prior action on October 4, 2017.  See ECF No. 7 (prior action).  On October 17, 2017, the court determined the first amended complaint was appropriate for service.  See ECF No. 10 (prior action).  The court also ordered that Palko be terminated as a party to the prior action for failure to state a claim because the first amended complaint did not name Palko.  See id.  The remaining defendants filed their answers on November 16, 2017, see ECF No. 11 (prior action), and August 21, 2018, see ECF No. 10 (prior action).  Defendants filed a motion for summary judgment in the prior action on June 7, 2019, see ECF No. 28 (prior action), which the court granted in full on October 1, 2020, see ECF No. 44 (prior action).  Judgement in the prior action was entered the same day.  See ECF No. 45 (prior action).  Plaintiff did not appeal.

/ / /

/ / /

3

1    In granting summary judgment, the Chief District Judge adopted in full findings

2    and recommendations issued on March 11, 2020.  See ECF Nos. 40 (Magistrate Judge's findings

3    and recommendations) and 44 (Chief District Judge's order).  The findings and recommendations

4    in the prior action described Plaintiff's claims as follows:

5         Plaintiff's first amended complaint ("FAC"), ECF No. 7, presents
          four claims for relief: (1) retaliation in violation of the First Amendment,
6         against defendant correctional officers Baker, Gonzalez, Rashid,
          Whitehead and Marquez; (2) conspiracy to retaliate in violation of the
7         First Amendment, against defendants Baker, Gonzalez, Rashid, Whitehead
          and Marquez; (3) interference with medical care in violation of the Eighth
8         Amendment, against defendants Gonzalez, Rashid, Whitehead and
          Marquez; and (4) sexual harassment in violation of the Eighth Amendment
9         against defendants Baker and Gonzalez. ECF No. 10 at 3.

10   ECF No. 40, pgs. 1-2 (prior action).

11   With respect to Eighth Amendment deliberate indifference claims related to

12   medical care, the court discussed claims arising in July 2016, see id. at 11-15 (prior action), and

13   August 2016, see id. at 15-18 (prior action).  Claims arising in August 2016 are unrelated to the

14   claim against Defendant Palko in the current action and are not discussed here.  See id. at 15-18.

15   (prior action).

16   As to the July 2016 claim in the prior action, which the court discussed alongside

17   related retaliation claims not raised in the current action, the Court stated:

18        Plaintiff has not identified evidence to support essential elements
          of his claims that defendants Gonzales, Rashid and Marquez acted with
19        deliberate indifference to his serious mental health needs on July 24, 2016,
          and that their interference with his mental health care was retaliatory.
20        Plaintiff testified at his deposition that he heard Gonzales, Rashid and
          Marquez tell Dr. Palko "that I was playing games." Pl. Dep. at 66:22-23.
21        Later in the deposition he clarified that Marquez had made this statement,
          and that Gonzalez and Rashid had nodded in agreement. Pl. Dep. at 90:3-
22        19. Each defendant has declared that he did not speak with Dr. Palko
          about plaintiff's mental health condition or state of mind. See ECF No. 28-
23        7 at 3 (Gonzales Decl.); ECF No. 28-10 at 2-3 (Rashid Decl.); ECF No.
          28-8 at 3 (Marquez Decl.). While Dr. Palko does state that her suicide risk
24        evaluation process generally includes consultation with custody and
          nursing staff, and that she did consult with these groups about plaintiff that
25        day (see ECF No. 28-12 at 3-5), neither her written evaluation nor her
          declaration specify any individual with whom she spoke. For purposes of
26        discussion, the court will assume that whether defendants made the
          alleged statements to Dr. Palko is disputed.

27

28   / / /

4

1    Even if Dr. Palko did speak with the defendants and they did tell
2    her that they believed plaintiff was faking his depression, however, their
     opinions were precisely that: opinions, and there is no indication that they
3    influenced Dr. Palko's decision not to admit plaintiff for treatment. To the
     contrary, Dr. Palko's notes document a host of other factors that she took
4    into consideration in exercising her professional judgment. For example,
     Dr. Palko's declaration mentions that she talked to the psychiatric
5    technician who had called for plaintiff's emergency referral. See ECF No.
     28-12 at 5. The technician told Dr. Palko that s/he had overheard plaintiff
6    make a statement to another inmate which, in turn, suggested to Dr. Palko
     that plaintiff's motivation in being evaluated was the secondary gain of
7    being able to have access to female staff. (footnote omitted) See id. at 5. In
     addition, the record documents Dr. Palko's personal observation of
8    plaintiff, specifically that when she entered the room, plaintiff "quickly
     chang[ed] his affect to present as depressed." See id. at 10. These facts,
9    plaintiff's limited admissions history, (footnote omitted) and a recent
     admission in May 2016 in which some of plaintiff's responses were
10   described as "rehearsed" (see id. at 10), independently support Dr. Palko's
     decision not to admit plaintiff, regardless of what defendants may or may
11   not have said to her.
           The question before the court is not whether Dr. Palko's
12   assessment was correct, but whether plaintiff has identified evidence
     supporting his allegations against the defendant correctional officers. He
13   has not. On the record before the court, no jury could find that Gonzales,
     Rashid and Marquez influenced Dr. Palko's evaluation of plaintiff's
     suicide risk by telling her that plaintiff was faking a mental health crisis.
14         To the extent that plaintiff claims deliberate indifference to his
15   serious mental health needs, defendants are entitled to summary judgment
     on the following additional and independent grounds. First, plaintiff has
16   not identified evidence from which a jury could conclude that the
     defendants subjectively knew he was actually a danger to himself on July
17   24, 2016. Even an unreasonable belief that plaintiff was faking would
     defeat liability. See Farmer, 511 U.S. at 835, 837. Second, plaintiff has not
18   identified any evidence that the correctional defendants had any authority
     over what mental health care he would receive. The defendants did not
19   prevent plaintiff from being evaluated by a mental health clinician. The
     exercise of independent professional judgment by Dr. Palko means that
20   defendants cannot have been the ones who subjected plaintiff to any
     deprivation of his right to adequate care, as required by statute for liability.
21   See 42 U.S.C. § 1983 (liable party is the person who "subjects, or causes
     to be subjected" another person to the deprivation of federal rights).

22   ECF No. 40, pgs. 13-14. (prior action).

23   Based on this discussion, the court concluded that the moving defendants were

24   entitled to judgment as a matter of law on Plaintiff's July 2016 claims.  See id. at 15 (prior

25   action).

26   / / /

27   / / /

28   / / /

1

## II. STANDARDS FOR MOTION TO DISMISS

2            In considering a motion to dismiss, the Court must accept all allegations of

3   material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

4   Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

5   v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

6   738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

7   ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

8   395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

9   factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

10  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

11  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

12          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

13  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

14  notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly,

15  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

16  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

17  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

18  allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The

19  complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at

20  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

21  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

22  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

23  it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting

24  Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

25  defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

26  to relief."  Id. (quoting Twombly, 550 U.S. at 557).

27  / / /

28  / / /

6

1    In deciding a Rule 12(b)(6) motion, the court generally may not consider materials

2    outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

3    Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1)

4    documents whose contents are alleged in or attached to the complaint and whose authenticity no

5    party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

6    and upon which the complaint necessarily relies, but which are not attached to the complaint, see

7    Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

8    of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

9    1994).

10    Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

11    amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

12    curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

13

14    **III. DISCUSSION**

15    In general, Defendant Palko contends Plaintiff's current action is barred under the

16    doctrine of preclusion.  More specifically, Defendant contends res judicata, or claim preclusion,

17    applies.[2]

18    There are two distinct doctrines regarding the preclusive effect of prior litigation:

19    (1) claim preclusion, sometimes referred to as res judicata, and (2) issue preclusion, sometimes

20    referred to as collateral estoppel.  See Lucky Brand Dungarees, Inc. v. Marcel Fashions Group,

21    Inc., 140 S. Ct. 1589, 1594-1595 (2020).  "Preclusion of nonparties falls under the rubric of

22    collateral estoppel rather than res judicata because the latter doctrine presupposes identity [of

23    parties] between causes of action."  Montana v. United States, 440 U.S. 147, 154 (1979).  Res

24    judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits,

25    conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on

---

26   [2]    Defendant also contends the action is barred by the doctrines against claim-
splitting and duplicative actions.  See ECF No. 23-1, pgs. 13-14.  Defendant's argument is based
27   on the premise that the prior action is still pending.  Though it was pending at the time Defendant
filed the instant motion to dismiss, the prior action has since been closed and is no longer
28   pending.  Therefore, the doctrines against claim-splitting and duplicative actions do not apply.

1    adjudication.  See id.  Under res judicata, or claim preclusion, a final judgment on the merits in a

2    prior action precludes the same parties or their privies from relitigating claims that were or could

3    have been raised in that action.  See Cromwell v. County of Sac, 94 U.S. 351, 352 (1877). Under

4    collateral estoppel, or issue preclusion, once a court has decided an issue of fact or law necessary

5    to its judgment, that decision may preclude re-litigation of the same issue of fact or law in a

6    subsequent suit.  Montana, 440 U.S. at 153.

7            As discussed below, while the Court finds that res judicata does not bar the current

8    action, collateral estoppel does because issues necessary to decide Plaintiff's claim against

9    Defendant Palko in the current action were decided against Plaintiff in the prior action.

10           **A.**     **Res Judicata (Claim Preclusion)**

11           Defendant argues that this suit is barred by the doctrine of res judicata.  Res

12   judicata applies when "a final judgment on the merits bars parties or their privies from raising

13   additional claims on the same cause of action." See Stratosphere Litig. LLC v. Grand Casinos,

14   Inc., 298 F.3d 1137, 1142 n.3 (9th Cir. 2002). "If a later suit advances the same claim as an

15   earlier suit between the same parties, the earlier suit's judgment prevents litigation of all grounds

16   for, or defenses to, recovery that were previously available to the parties, regardless of whether

17   they were asserted or determined in the prior proceeding." Lucky Brand Dungarees, Inc., 140 S.

18   Ct. at 1594. "The Ninth Circuit has held that res judicata applies when: (1) the issues decided in a

19   prior action are identical to the issues in the pending action; (2) the prior action resulted in a final

20   judgment on the merits; and (3) the parties involved in the prior action were either identical to, or

21   in privity with the parties in present action." See Del Campo v. Kennedy, 491 F. Supp. 2d 891,

22   901 (9th Cir. 2006).  If any of these elements is unmet, res judicata does not apply. See City of

23   Martinez v. Texaco Trading & Transp., Inc., 353 F.3d 758, 762 (9th Cir. 2003).

24           For the reasons discussed below, the Court finds res judicata inapplicable because,

25   while the prior action reached a final judgment on the merits, there is no identity or privity of

26   parties and there is no identity of claims.

27   / / /

28   / / /

8

1                    1.        <u>Final Judgment on the Merits</u>

2                    It is clear the prior action resulted in a judgment on the merits.  Even though the

3 motion for summary judgment in the prior action was still pending when Defendant filed the

4 instant motion to dismiss on May 10, 2020, the court in the prior action subsequently granted

5 summary judgment on October 1, 2020.  <u>See</u> ECF No. 44 (prior action).  Judgement in the prior

6 action was entered the same day.  <u>See</u> ECF No. 45 (prior action).

7                    2.        <u>Identity or Privity of Parties</u>

8                    Identity or privity of parties is an element of res judicata to ensure that the parties'

9 interests were sufficiently represented in the previous action.  <u>Tahoe-Sierra Pres. Council, Inc. v.</u>

10 <u>Tahoe Reg'l Planning Agency</u>, 322 F.3d 1064, 1081 (9th Cir. 2003).

11                    Here, Defendant Palko argues there is an identity of parties between the two

12 actions because she was originally named in the prior action.  Plaintiff, however, chose not to

13 pursue the prior action as against Palko by not naming her as a defendant when he amended his

14 complaint.  Given that Palko was not a party to the prior action beyond the pleading stage, the

15 Court finds that, strictly speaking, the prior action did not involve identical parties.  Specifically,

16 the prior action did not result in any decision as to Palko.  Thus, there is no identity of parties.

17                    Alternatively, Defendant argues there is sufficient privity of parties to apply res

18 judicata.  "Even when the parties are not identical, privity may exist if 'there is 'substantial

19 identity' between parties, that is, when there is sufficient commonality of interest.'" <u>Tahoe-Sierra</u>

20 <u>Pres. Council, Inc.</u> 332 F.3d at 1081 (citation omitted).  In cases against government employees,

21 privity exists where "each current defendant is a . . . government employee who is 'so identified

22 in interest with a party to former litigation that he represents precisely the same right in respect to

23 the subject matter involved.'"  <u>Konarski v. City of Tucson</u>, 289 F. App'x 242, 244 (9th Cir. 2008)

24 (citing <u>In re Schimmels</u>, 127 F.3d 875, 881 (9th Cir. 1997)).

25                    According to Defendant:

26                    Here, Defendant assisted the defendants in *Keith Candler v. Baker*
                   by submitting a sworn declaration that explained her role in the incident,

27                    and broadly explained the mental health treatment that Plaintiff received
                   the day of the incident. (Req. Jud. Not., Ex. G at RJN.124-134.) As noted

28                    in her declaration, Defendant is an employee of the California Department

of Corrections and Rehabilitation (CDCR) (*id.* at RJN.125)—just like the other defendants in *Keith Candler v. Baker*. Although she was not a named defendant at the time the motion for summary judgment was filed in that case, she reasonably had an interest in the defense of the case.

For one, as a State-licensed psychologist, she undoubtedly had an interest in protecting her license and reputation. (*See id.*, ¶ 1.) Second, as a mentor in CDCR's Suicide Risk Evaluation Procedure, Defendant had an interest "to ensure clinicians provide the highest standard of suicide risk assessments" to inmate-patients. (*Id.* at RJN.126, ¶ 2.) Lastly, as a fellow employee of CDCR, Defendant also had an interest in supporting her fellow employees, and defending the critical relationship between custody staff and mental health staff within CDCR. (footnote omitted).

ECF No. 23-1, pgs. 12-13.

In making this argument, Defendant relies on the Ninth Circuit's decision in <u>In re Schimmels</u>.  Defendant states:

. . .The Ninth Circuit explored this at length in *In re Schimmels*:

One who prosecutes *or defends* a suit in the name of another to establish and protect his own rights, or *who assists* in the prosecution or defense of an action in aid of some interest of his own is as much bound as he would be if he had been a party to the record.

*In re Schimmels*, 127 F.3d at 881 (emphasis added) (alterations, internal citations, and quotation marks omitted).

ECF No. 23-1, pg. 12.

By emphasizing the phrases "or defends" and "who assists," Defendant appears to ask the Court to find privity exists because Palko assisted with the defense of the prior action. The Court finds this apparent argument misapplies <u>In re Schimmels</u>.  The Ninth Circuit began its discussion of privity by noting "[t]he doctrine of res judicata provides that 'a final judgment on the merits bars further claims by parties *or their privies* based on the same cause of action.'"  <u>In re Schimmels</u>, 127 F.3d at 880-81 (quoting <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979)) (emphasis added).  The court also observed that the purposes of res judicata are "likewise implicated 'when nonparties assume control over litigation in which they have a direct financial or proprietary interest. . . .'"  <u>Id.</u> at 881 (quoting <u>Montana</u>, 440 U.S. at 154).  Thus, the inquiry is not whether Defendant simply assisted with the defense of the prior action.  For Defendant Palko to be a privy of the defendants to the prior action, and thus in privity with them, Defendant must

10

1    show some direct financial or proprietary link between her interests and those of the defendants to

2    the prior action.  Defendant Palko must also show some kind of assumption of control of these

3    interests.

4              The Court finds Defendant has done neither.  Defendant attempts to link some of

5    her interests to those represented in the prior action by listing: (1) "an interest in protecting her

6    license and reputation," (2) "to ensure clinicians provide the highest standard of suicide risk

7    assessments to inmate-patients," and (3) "defending the critical relationship between custody staff

8    and mental health staff within the CDCR."  ECF No. 23-1, pg. 13.  These links are too tenuous to

9    establish Defendant Palko is in privity with any defendant to the prior action in the sense that one

10   assumed control of the other's direct financial or proprietary interests.  While Defendant Palko

11   certainly has an interest in protecting her license and reputation, those interests were not assumed

12   by any defendant in the prior action.  Further, these are not direct financial or proprietary interests

13   which are transferrable such that the defendants in the prior action were actually representing

14   these interests.  Similarly, ensuring clinicians provide a high standard of care and defending the

15   relationship among staff are not transferable direct financial or proprietary interests.

16             The Court finds Defendant has failed to establish either identity of parties or

17   privity of parties and, for this reason alone, res judicata does not apply.

18                          3.    Identity of Claims

19             By definition, res judicata cannot apply if the current and prior actions do not

20   involve the same claim.  The Ninth Circuit has identified four factors relevant to determining

21   whether successive lawsuits share an identity of claims.  See Turtle Island Restoration Network v.

22   U.S. Dep't of State, 673 F.3d 914, 917-18 (9th Cir. 2012).  These factors are: (1) whether rights

23   or interests established in the prior judgment would be destroyed or impaired by prosecution of

24   the second action; (2) whether substantially the same evidence is presented in the two actions;

25   (3) whether the two suits involve infringement of the same right; and (4) whether the two suits

26   arise out of the same transactional nucleus of facts.  See id.  The Ninth Circuit has also held that

27   the fourth factor is the central criterion in determining whether there is an identity of claims for

28   purposes of res judicata.  See Owens v. Kaiser Found. Health Plan, Inc., 422 F.3d 708, 714 (9th

1   Cir. 2001).

2          Here, it is clear from the procedural background outlined above that the prior

3   action did not involve any Eighth Amendment medical claims against Defendant Palko because

4   she was dismissed as a defendant to the prior action.  Put another way, the question of whether

5   Palko was deliberately indifferent to a serious medical need – the essence of any Eighth

6   Amendment medical claim – was not an issue in the prior action.  Strictly speaking, no Eighth

7   Amendment medical claim was raised in the prior action as against Palko.

8          Defendant asserts that the current and prior actions nonetheless share an identity of

9   claims because "Plaintiff already filed a nearly identical suit against Defendant, in which she was

10  dismissed during screening."  ECF No. 23-1, pg. 1.  This fact alone does not establish an identify

11  of claims.  As Defendant acknowledges, Plaintiff's deliberate indifference claim as against Palko

12  did not proceed past screening.  This occurred, however, because Plaintiff did not name Palko in

13  his amended complaint filed in the prior action, not because the claim was dismissed by the court

14  for some procedural or substantive reason which could constitute a final judgment on the merits.

15         The Court now turns to evaluation of the four factors identified in Turtle Island

16  Restoration Network.

17                 a.      Will There Be an Impairment or Destruction of Rights?

18         Defendant claims she would suffer prejudice if forced to defend herself in a second

19  lawsuit arising out of the same incident.  See ECF No. 23-1, pg. 7.  According to Defendant:

20              Although she was terminated from the initial lawsuit by the time
                defendants in *Keith Candler v. Baker* filed their motion for summary
21              judgment (Req. Jud. Not., Ex. F at RJN.121-123), Defendant substantially
                participated in the defense of the action by filing a six-page declaration
22              that explained her role in the incident (Req. Jud. Not., Ex. G at RJN.124-
                134). By allowing the instant lawsuit to proceed, Plaintiff now has the
23              benefit of having seen the evidence that Defendant will present in her own
                defense, and can alter his litigation strategy accordingly. In essence, he
24              gets a second bite at the apple to rebut Defendant's evidence.
                      Moreover, to the extent that the Court construes the dismissal of
25              Defendant as a dismissal with prejudice (*see* section I.B., *infra*),
                Defendant may suffer prejudice in the form of inconsistent rulings —
26              particularly if Plaintiff appeals the dismissal of Defendant in *Keith
                Candler v. Baker*.
27                    This factor weighs in Defendant's favor.

28         Id.

                                          12

Defendant's argument is not persuasive.  The first factor identified in <u>Turtle Island Restoration Network</u> is whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action.  <u>See</u> 673 F.3d at 917-18.  The issue is not, as Defendant contends, whether she would suffer prejudice.  The issue is whether defendants to the prior action would suffer prejudice.

The final judgment in the prior action established nothing on the merits in favor of Palko for the simple reason Palko was not a defendant to the prior action.  Instead, the final judgment in the prior action established the moving defendants' rights and interest in being free from claims of deliberate indifference to a serious medical need based on the facts alleged against those defendants.  An adjudication of the claim against Defendant Palko in the current action would do nothing to affect these rights and interests because Defendant Palko's liability for her conduct was not at issue in the prior action.  It is possible one defendant can be liable for her own conduct while others are not held liable for theirs even though the same incident is at issue.  Allowing the current action against Palko would result in nothing in terms of the rights and interests of the defendants to the prior action.

Because allowing the current action to proceed would not have any effect on rights or interests established by the judgment in the prior action, the Court finds this factor weighs against Defendant's position.

b.   <u>Will Substantially the Same Evidence Be Presented in Both Actions?</u>

Defendant references her declarations made in the prior action and contends "the parties will be retreading the same ground in this lawsuit." ECF No. 23-1, pg. 7.  While there will be overlap in the evidence presented, the thrust will not be the same.  With the motion for summary judgment in the prior case, Palko provided her declaration attesting that the moving defendants did not interfere with Plaintiff's medical care.  In the current action, Plaintiff's claim is necessarily focused on Defendant Palko's direct conduct with respect to Plaintiff's medical needs, not her indirect conduct insofar as it affected the moving defendants in the prior action.  The prior action involved other defendant's conduct, which was allegedly influenced by Palko.

13

1   The current action, by way of distinction, involves Defendant Palko's <u>own</u> conduct regardless of
2   how others may or may not have acted in response.

3          While there will be overlap, the Court does not find that substantially the same
4   evidence is involved.  To the contrary, the current action will involve evidence not relevant or
5   raised in the prior action.  This factor also weighs against Defendant's position.

6                   c.      <u>Do Both Actions Involve Infringement of the Same Rights?</u>

7          Defendant broadly defines the right Plaintiff alleges has been infringed in both
8   actions as arising under the Eighth Amendment and relating to medical care.  <u>See</u> ECF No. 23-1,
9   pgs. 7-8.  As in the qualified immunity context, the Court will look to the various pleadings and
10  motions in both actions as a guide.  <u>See e.g.</u> <u>Kelly v. Borg</u>, 60 F.3d 664, 667 (9th Cir. 1995)
11  (concluding that a clearly established right for purposes of qualified immunity must be defined
12  more narrowly than the constitutional provision guaranteeing the right, but more broadly than the
13  factual circumstances surrounding the alleged violation).

14         In screening the original complaint in the prior action, Judge Claire summarized
15  Plaintiff's claim against Palko as follows:  ". . . Plaintiff alleges. . . that. . .defendant Palko
16  violated his Eighth Amendment rights by exhibiting deliberate indifference to his serious medical
17  needs when, despite his contentions that he was suffering suicidal thoughts, she cleared him to
18  return to his cell. . . ."  ECF No. 4, pg. 2 (prior action).  This claim did not proceed to judgment
19  because Plaintiff did not name Palko in his amended complaint filed in the prior action.  Judge
20  Claire identified the remaining Eighth Amendment medical care claims as: "interference with
21  medical care in violation of the Eighth Amendment, against defendants Gonzalez, Rashid,
22  Whitehead and Marquez. . . ."  ECF No. 40, pgs. 1-2 (prior action).

23         In the current action, Plaintiff claims Defendant Palko was deliberately indifferent
24  to Plaintiff's suicidal ideations.  <u>See</u> ECF No. 1, pgs. 5-7.  This current claim is almost identical
25  to the claim originally asserted against Palko in the prior action which did not proceed to
26  judgment because Palko was dropped from the suit when Plaintiff filed his amended complaint in
27  the prior action.
28  / / /

1        Comparing the live claims in the two actions – the claims against Gonzalez,

2   Rashid, Whitehead, and Marquez in the prior action and the claim against Palko in the current

3   action – the Court finds the third <u>Turtle Island Restoration Network</u> factor to be neutral.  Though

4   the claims in both actions generally allege infringement of Plaintiff's Eighth Amendment rights

5   regarding medical care, the prior claim was about interference with access to medical care,

6   whereas the current claim is about denial of medical care.  On the one hand, both cases involve

7   Eighth Amendment rights.  On the other hand, both cases involve different allegations as to how

8   that right was violated and by whom.

9            d.    <u>Do Both Actions Arise Out of the Same Transactional Nucleus
               of Facts?</u>
10

11       Defendant claims that "there is no question that the two lawsuits arise out of the

12  same common transactional nucleus of facts."  ECF No. 23-1, pg. 8.  Defendant argues that the

13  relevant facts in both cases include all the events that transpired on the day that Plaintiff

14  attempted to commit suicide.  <u>See id.</u> at 8-9.

15       While Defendant is correct that both actions arise generally from events allegedly

16  occurring on the day Plaintiff attempted to commit suicide in July 2016, the facts alleged to be at

17  the heart of each claim are different.  In the current action, Plaintiff alleges that defendant Palko

18  spoke with him and heard him say he felt "the need" to hang himself with a bedsheet.  ECF No. 1,

19  pg. 6.  After hearing his state of mind, Plaintiff claims Defendant Palko sent him back to his cell,

20  with no extra precautionary measures, where he had a bedsheet.  <u>See id.</u>  In the prior action,

21  Plaintiff alleged defendants Marquez, Rashid, and Gonzales violated his Eighth Amendment

22  rights by telling Palko that plaintiff was "just playing games" and not actually suicidal.  <u>See</u> ECF

23  No. 2, pg. 12 (prior action).  Unlike the claim in the prior action, the claim in the current action

24  has nothing to do with what Palko allegedly told any of the defendants to the prior action, or what

25  they may have allegedly said to Palko, or what the defendants to the prior action did or did not do.

26       Based on this evaluation, the Court finds that res judicata is not applicable here.

27  / / /

28  / / /

**B.      Collateral Estoppel (Issue Preclusion)**

Having concluded that res judicata does not apply, the Court will consider whether the related preclusion doctrine of collateral estoppel bars the current action.

Collateral estoppel precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment.  Lucky Brand Dungarees, Inc., 140 S. Ct. at 1594. Collateral estoppel can be used by a defendant to estop a plaintiff from asserting a claim that had previously been litigated and lost against another defendant.  Collins v. D. R. Horton, Inc., 505 F.3d 874 (2007).  A party asserting collateral estoppel must show: (1) the issue or fact decided in a prior adjudication is identical to the one in the present action; (2) the prior adjudication reached a final judgment on the merits; (3) the party being estopped is the party, or is in privity with the party, against whom judgment was passed in a prior action; and (4) precluding re-litigation would not work an injustice against the party who is to be estopped.  Comentout v. Pierce County Superior Court, 2017 WL 1957125 (identify the court).  "Defensive use of collateral estoppel precludes a plaintiff from re-litigating identical issues by merely switching adversaries. Thus, defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible."  Collins, 505 F3d. at 881.

For the reasons discussed below, the Court concludes that each of the four elements required for application of collateral estoppel to bar the current action against Defendant Palko has been satisfied.

1.      Final Judgment on the Merits

As discussed above in the context of res judicata, it is clear the prior action reached a final judgment on the merits.

2.      The Party to be Estopped is a Party, or in Privity with a Party, Against Whom Judgment was Entered in the Prior Action

This element is also clearly satisfied.  Here, Defendant seeks to estop Plaintiff from litigating his Eighth Amendment claim.  Thus, Plaintiff is the party being estopped.  In the prior action, judgment was entered in favor of the moving defendants and against Plaintiff.  Thus, the party being estopped in the current action is the same party as against whom judgment was

16

1  entered in the prior action.

2              3.      Injustice to the Party to be Estopped from Precluding Re-litigation

3              The Court finds this element favors application of issue preclusion.  In the prior

4   action, Plaintiff had a full and fair opportunity to litigate his Eighth Amendment claim against

5   Palko.  Why he chose not to do so by omitting Palko from the amended complaint filed in the

6   prior action remains somewhat of a mystery.  Nonetheless, Plaintiff's current claim against

7   Defendant Palko was raised in the prior action and not the subject of Judge Claire's screening

8   order in that case.

9              Given that Plaintiff voluntarily chose to abandon his claim against Palko in the

10  prior action, the Court does not find that precluding re-litigation would work any injustice against

11  Plaintiff.  Application of defensive collateral estoppel to prevent Plaintiff from re-litigating a

12  claim he had every opportunity to litigate in the prior action promotes the preference that all

13  potential parties be joined in a single action if possible.  Here, it was possible for Plaintiff's

14  claims against Palko to have been litigated in the prior action.  Application of defensive collateral

15  estoppel here provides plaintiffs an incentive to joint parties in a single lawsuit.  See Collins, 505

16  F3d. at 881.

17              4.      Identical Issue or Fact from Prior Adjudication

18              Having concluded that three of the four elements favor application of collateral

19  estoppel to bar the current action, the Court considers whether the final element has been met.

20              The inquiry necessarily begins with an analysis of the facts and issues decided in

21  the prior action.   In ruling on the motion for summary judgment in the prior action, Judge Claire

22  noted several key facts and issues.  Judge Claire noted: (1) "Dr. Palko's notes document a host of

23  other factors that she took into consideration in exercising her professional judgment"; (2) "For

24  example, Dr. Palko's declaration mentions that she talked to the psychiatric technician who had

25  called for plaintiff's emergency referral. . . ."; (3) "In addition, the record documents Dr. Palko's

26  personal observation of plaintiff, specifically that when she entered the room, plaintiff 'quickly

27  chang[ed] his affect to present as depressed'"; and (4) "These facts, plaintiff's limited admissions

28  history, (footnote omitted) and a recent admission in May 2016 in which some of plaintiff's

1   responses were described as 'rehearsed' (citation omitted), independently support Dr. Palko's

2   decision not to admit plaintiff, regardless of what defendants may or may not have said to her."

3   ECF No. 40, pgs. 13-14 (prior action).

4          In the current action, Plaintiff claims Defendant Palko was deliberately indifferent

5   for sending Plaintiff back to his cell without precautions against suicide despite telling Palko he

6   was suicidal.  The facts and issues outlined above which were decided in the prior action are

7   necessarily involved in deciding the claim in the current action.  In particular, the current action

8   will involve the issue of Defendant Palko's subjective state a mind.  This factual issue, however,

9   was already decided against Plaintiff in the prior action in which it was determined that the facts

10  "independently support Dr. Palko's decision. . . ."  Additionally, the facts in the prior action show

11  that Palko exercised professional judgment.  Finally, the facts in the prior action indicate that

12  Palko spoke with a psychiatric technician before releasing Plaintiff back to his cell.

13         The Court finds that the facts decided in the prior action would defeat the claim

14  raised in the current action.  Thus, the two actions involve identical factual issues necessary to the

15  claims raised in both cases.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

18

1

## V. CONCLUSION

2          Based on the foregoing, the undersigned recommends that Defendant Palko's

3 motion to dismiss, ECF No. 23, be granted and that this action be dismissed with prejudice as

4 barred under the doctrine of collateral estoppel.

5          These findings and recommendations are submitted to the United States District

6 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

7 after being served with these findings and recommendations, any party may file written

8 objections with the court.  Responses to objections shall be filed within 14 days after service of

9 objections.  Failure to file objections within the specified time may waive the right to appeal.  See

10 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11

12     Dated:  March 5, 2021

13                                                                       _____
                                                                         DENNIS M. COTA
14                                                                       UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                      19